UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WESLEY JAMES MEAD,

    Plaintiff,

v.                                        Case No: 6:14-cv-874-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff Wesley James Mead appeals to this Court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. He contends that the administrative law judge ("ALJ") erred in: (1) failing to consider his use of a cane and need for a sit/stand option when formulating Plaintiff's residual functional capacity assessment, and (2) failing to properly assess Plaintiff's credibility. After due consideration, the Commissioner's final decision is **reversed**.

### I. Background

Plaintiff filed his application for disability insurance benefits on November 28, 2012, alleging that he has been disabled since June 1, 2012, due to sleep apnea, posttraumatic stress disorder, degenerative disc in back, shoulder pain rotator cuff, and knee pain (Tr. 140,157,161). His claim was denied initially and on reconsideration, and he requested a *de novo* hearing before an ALJ (Tr. 30, 90, 97, 100).

---

[1] On December 18, 2014, both parties consented to the exercise of jurisdiction by a magistrate judge and the case was referred to me by Order of Reference the next day (Docs. 13, 15).

The administrative hearing was held on November 7, 2013, at which time Plaintiff, represented by counsel, appeared and testified, as did a vocational expert (Tr. 30-57). In a decision dated February 11, 2014, the ALJ concluded that Plaintiff was not disabled from his alleged onset of disability date through the date of the decision (Tr. 12-26). That decision became the final decision of the Commissioner when the Appeals Council declined review on April 4, 2014 (Tr. 1-5).

Plaintiff was 52 years old on the date of the administrative hearing (Tr. 39). He has at least a high school (12th grade) education and a 22-year military career followed by work as a furniture sales representative, furniture mover/driver, forklift operator, and maintenance mechanic (Doc. 17 at 18; Tr. 24, 39, 40, 50, 162). Plaintiff's last date insured for disability insurance purposes was December 31, 2016 (Tr. 157).

## II. The ALJ's Decision

In determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process which appears in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The evaluation process requires the ALJ to determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 14). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease of the left shoulder, degenerative disc disease of the lumbar spine, sleep apnea, posttraumatic stress disorder, and anxiety disorder (Tr. 14). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d), 404.1525, 404.1526) (Tr.14-15). Before proceeding to step four, the ALJ also determined Plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can occasionally climb, balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead with left upper extremity; can maintain concentration for 2 hours at a time during an 8-hour workday; can occasionally interact with co-workers and supervisors; can have no interaction with the general public; and can adapt to infrequent change in the workplace.

(Tr. 16).

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Jobs in this category require a good deal of walking or standing, or if they involve sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." Id. If a claimant can do light work, the Commissioner will also find that the claimant can do sedentary work "unless there are

additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Id.  At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work (Tr. 24).   But, the ALJ concluded at step five that there are other jobs in the national economy that Plaintiff could perform and therefore, he was not disabled (Tr. 25).

### III. Medical Evidence[2]

Plaintiff has a protracted history of lower back and bilateral knee pain (Tr. 1288). During a July 18, 2012 compensation and pension examination, he was found to have diminished bilateral knee flexion, more severe on the left, as well as bilateral joint line tenderness to palpation, excess fatigability, and pain on movement (Tr. 301-302; 305). Lumbar spine x-rays revealed degenerative disc disease at L3-4 and L4-5, with only mildly narrowed disc spaces, a minor abnormality (Tr. 205, 623).   X-rays of his left shoulder and knees showed normal findings (Tr. 205-06, 325).   Straight leg testing showed negative results and Plaintiff maintained normal strength throughout (Tr. 292-94). On July 30, 2012 he presented to a post-deployment transition appointment with complaints of chronic back and bilateral knee pain (Tr. 559).   Examination revealed positive bilateral straight leg raise tests at 45 degrees (Tr. 561).

At a physical therapy consultation on October 3, 2012, Plaintiff exhibited a normal gait (Tr. 222).   Following the therapy session he reported some improvement, noting less shoulder pain and less stiffness in his back (Tr. 374).   His physical therapist advised him to continue therapy once per week for four weeks (Tr. 375).

---

[2] The information in this section comes from the joint memorandum filed by the parties on May 1, 2015. See (Doc. 17 at 4-9).

On November 1, 2012, Plaintiff complained of left shoulder pain and requested an orthopedic consultation (Tr. 210).   The Veterans Administration denied his request because he had showed progress with physical therapy (Tr. 210).   Plaintiff did receive a Thermoskin shoulder support (Tr. 211).   Treatment notes show that he reported total relief of left shoulder pain when using the shoulder support (Tr. 362, 518, 812, 1147).

On November 7, 2012, Plaintiff reported doing hard yard work while wearing his shoulder support (Tr. 361).   He also reported increased shoulder pain (Tr. 361).

On November 19, 2012, Plaintiff's physical therapist noted improvement of his shoulder (Tr. 507).   Plaintiff was observed walking slowly during mental health sessions in August and October 2012, and March 2013 (Tr. 367, 392, 1131).   An MRI of his cervical spine taken in March 2013 showed minimal disc bulging at C4-5 and C5-6 and no significant abnormality (Tr. 662).

In April 2013, Plaintiff was found to retain normal flexion and abduction (Tr.968). He did not exhibit signs of painful motion (Tr. 969).   Plaintiff performed repetitive use testing with three repetitions (Tr. 969-70).   He exhibited muscle strength of 5/5 in both shoulders (Tr. 971-72).   Both the empty can test and Hawkins impingement test, which check for rotator cuff tendinopathy or tear, showed negative results on the left (Tr. 972). Based upon the examination, Dr. Cameron Atkinson opined that Plaintiff would experience difficulty performing any job that required overhead activity (Tr. 976).

In March 2013, Plaintiff stated during a mental status examination that he liked scuba diving, had scuba equipment, and loved to walk on the beach (Tr. 794, 1130).

In April 2013, Plaintiff reported that he tolerated going to a hockey game, but could not tolerate the crowd at a pop concert he went to with his daughter (Tr. 1553).   Also in April 2013, Dr. Nathaniel Robinson, a State agency medical consultant, reviewed the

record and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour workday; occasionally reach overhead with his left arm; and occasionally climb, balance, stoop, kneel crouch and crawl (Tr. 82-84).   Another state agency medical consultant, Dr. Carolyn Parrish, reviewed these findings in May 2013 and concurred with Dr. Robinson's assessment (Tr. 68-70).

On June 14, 2013, Plaintiff presented for a physical therapy evaluation, ambulating without an assistive device (Tr. 1539).   He reported bilateral knee pain worse on the left that was aggravated by prolonged walking (Tr. 1540).   At that time Plaintiff was observed walking with a mildly antalgic gait, using a single point cane and single forearm crutch (Id.).   Dr. David M. McCoy opined that Plaintiff would benefit from a forearm crutch to aid mobility and unload his left lower extremity (Id.).   Plaintiff's range of motion appeared to fall within functional limits (Id.).   He reported using a cane occasionally during a June 29, 2013 compensation and pension examination (Tr. 1511).

Plaintiff appeared for a July 11, 2013, consultative examination performed by Dr. William Roy Stauffer (Tr. 1288).   He complained of back pain with occasional radiation to his left leg contributing to difficulty standing more than 10 minutes, bending, and lifting, as well as bilateral knee pain causing difficulty walking, kneeling, crouching, and driving (Id.).   Plaintiff denied any treatment for his back pain, except for visits to a private chiropractor that helped some of his symptoms (Id.).   At the time, Plaintiff was using a crutch but could walk without it (Id.).   Dr. Stauffer noted that Plaintiff used a cane/crutch, but not with minimal ambulation (Tr. 1290).   Upon examination, the doctor detected tenderness over the lumbar spine and left shoulder, bilateral knee joint crepitus and tenderness, and restricted lumbar flexion and left should abduction, forward elevation, and internal rotation

- 6 -

(Id.).   Plaintiff showed a normal range of motion throughout, except for lumbar spine flexion to 70 degrees and left shoulder adduction to 100 degrees, left shoulder forward elevation to 90 degrees, and internal rotation to 80 degrees (Tr. 1290).   His cranial nerves remained intact and he exhibited motor strength of 5/5 in his arms and legs as well as 5/5 grip strength bilaterally (Id.).   Plaintiff could squat and walk on his heels and toes (Id.).   Dr. Stauffer described Plaintiff's deep tendon reflexes as 2+ and symmetrical (Id.).   At the conclusion of the examination Dr. Stauffer diagnosed chronic back pain with a history of degenerative disc disease, bilateral knee pain secondary to osteoarthritis, and left rotator cuff tear (Id.).

Dr. Stauffer opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; sit two hours at a time, stand 20 minutes at a time, and walk 20 minutes at a time for a total of 6 hours each; and occasionally balance, stoop, kneel, crouch, crawl, and reach with his left upper extremity (Tr. 1291, 1296).

In July 2013, Plaintiff reported walking five miles per day, but said he experienced shortness of breath when climbing hills (Tr. 1428).   On July 22, 2013, he reported zero pain (Tr. 1386).   In August 2013, Plaintiff denied pain (Tr. 1327).   An examination of his spine showed no pain with palpation (Id.).   His range of motion was intact and he exhibited equal strength bilaterally (Id.).

On July 15, 2013, Dr. S. Kathryn Steel conducted a consultative psychological evaluation (Tr. 1282-87).   Plaintiff displayed a normal gait, posture, and motor status (Tr. 1283).   He reported going for a walk, watching television, and walking to his parents' house to visit on his good days (Tr. 1282).   Plaintiff said he attended to household cleaning tasks such as bimonthly vacuuming (Id.).

In October 2013, Plaintiff said he planned to go to the Philippines for three months to work on a house (Tr. 1314, 1655).  He displayed a balanced gait at that time (Tr. 1657).

During a November 18, 2013, primary care appointment, Plaintiff described chronic back, neck, bilateral shoulder, and bilateral knee pain that necessitated hydrocodone twice daily (Tr. 1709).  He continued to ambulate with a cane (Tr. 1711).

At the administrative hearing Plaintiff testified that he "always" uses his cane, which enables him to walk more effectively (Tr. 35, 44).  He attributed his cane use to both knee and lower back pain (Tr. 45).  Plaintiff explained that he had initially been prescribed a crutch, but exchanged it for a cane when it became too "cumbersome" on his forearm (Tr. 48).

## IV. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## V. Discussion

Although Plaintiff raises multiple issues, only one requires discussion. The ALJ gave great weight to that part of Dr. Stauffer's opinion that Plaintiff could stand for 20 minutes at a time and sit for 20 minutes at a time (Tr. 1296). The Commissioner argues, and the Court agrees, that the ALJ considered Dr. Stauffer's opinion (Tr. 23). But, the ALJ failed to include these limitations in Plaintiff's ability to sit and stand in Plaintiff's residual functional capacity assessment. The ALJ also failed to explain why these limitations were omitted.

Now the Commissioner argues that because Dr. Stauffer only examined Plaintiff once, his opinion is not entitled to any special deference. See Denomme v. Comm'r Soc. Sec. Admin., 518 Fed. App'x 875, 879 (11th Cir. 2013); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). The Commissioner also argues that Plaintiff has failed to point to any evidence in the record that a treating physician has identified the need for Plaintiff to have a sit/stand option. Then the Commissioner frames the issue as follows: "[t]he issue is whether the Court on this *particular* record can determine whether the ALJ's conclusions are rational and supported by substantial evidence, even though the ALJ did not expressly articulate reasons for not adopting Dr. Stauffer's opinion that Plaintiff required a sit-stand option." (Doc. 17 at 16) (emphasis in original). First, contrary to the

- 9 -

Commissioner's statement of the issue, it is clear from her decision that the ALJ did adopt Dr. Stauffer's opinion, which the ALJ gave "great weight."  (Tr. 24).   After deciding that the doctor's opinion that Plaintiff requires a sit-stand option deserves great weight, the ALJ should have included the option in Plaintiff's residual functional capacity assessment or, the ALJ should have explained why it did not belong in the residual functional capacity assessment.   Without this explanation, the Court cannot conclude that the ALJ's residual functional capacity assessment is supported by substantial evidence.   Therefore, reversal is required.   Cf. Winschel v. Commissioner, 631 F.3d 1176, 1179 (11th Cir. 2001).

## VI. Conclusion

The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with the findings in this Order, pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk is directed to enter judgment and **CLOSE** the file.   The deadline for Plaintiff to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) is 30 days after he receives notice from the Commissioner of the amount of past due benefits awarded.   Upon receipt of this notice, Plaintiff shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise them that the notice has been received.

**DONE** and **ORDERED** in Orlando, Florida on December 11, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record